## MERRITT vs. BROWN AND WIFE.

1. An answer, in stating the particulars of a transaction charged and inquired into by the bill, is responsive.

2. An agreement, between a purchaser at a sheriff's sale and the defendant in execution, in consideration of a transfer of certain stock, to bid the amount necessary to pay the indebtedness, and if the defendant in execution could raise the money before the time fixed for the delivery of the deed, that the property should be conveyed to him, will not be enforced in equity, if the party asking performance has failed to comply substantially with his part of it.

3. A deed, taken in lieu of a mortgage, for the purpose of depriving the grantor of his right to redeem, will sometimes be declared to be a mortgage, where there is at the same time an agreement to re-convey. But such construction is never made, where there was no antecedent debt to be secured thereby, or no money advanced for a loan, and where it appears that no loan was intended.

4. Time is frequently considered not of the essence of an agreement to convey lands, and in such case, a delay will not bar the right to specific performance. But where the value of the property has materially changed, or where great financial changes have materially altered the relative value of money and land, time will be considered material, and a party will not be allowed to lie by until the change sets in his favor, and then have specific performance.

5. To entitle a party to the aid of this court in enforcing specific performance, he must have shown himself ready, willing, and eager to perform his part.

6. The fact that the complainant, when called on to perform the contract on his part, has refused or omitted to do it, will bar his claim to specific performance.

This cause was argued on bill, answer, replication, and proofs.

*Mr. Alward* and *Mr. Williamson*, for complainant.

*Mr. Gilchrist* and *Mr. Bradley*, for defendants.

The Chancellor.

The object of this suit is to compel the defendants to convey to the complainant lands at Elizabethport, which it is alleged the defendant, Edward G. Brown, purchased in trust for him, upon payment of such advances made by Brown, as should be found due on an account taken. The complainant alleges, that at a foreclosure sale of lands belonging to him, made by the sheriff of Union county, on the 21st day of March, 1861, to satisfy a mortgage for $28,000, held by William Gibbons, enough had been sold to satisfy all but $9000. That he requested Brown to purchase the balance of the mortgaged premises for him for that sum, and to pay for him whatever balance he might be unable to raise ; that Brown consented, and agreed to purchase the property, and to advance for him what balance he might be unable to raise ; and that for that purpose, and as part of the purchase money, he advanced to Brown twenty-five shares of stock, of the par value of $2500. That the sheriff, at the request of Merritt, made in pursuance of said arrangement, sold the whole of the remaining lots in the tract in one parcel, and that Brown purchased it at one bid for $9000 ; that the lots were worth twice that sum, and would have sold for a much larger sum, if sold in parcels ; and that it was understood that Brown was buying for complainant, who, as owner of the equity of redemption, was the only person interested, and on that account no one bid against him. That Merritt

expected to raise and pay the money above the value of the stock by the time the sheriff's deed was to be delivered, but being disappointed, Brown offered to advance, and did advance the money for Merritt, and took the deed in his own name, but in trust for Merritt, and to secure himself for the amount he had advanced. That Brown took possession of the premises, and received the rents, issues, and profits, and now refuses to convey them to Merritt upon being reimbursed the amount advanced with interest.

The defendants in their answer, admit the sale by the sheriff, and that Brown bought the lots as stated in the bill at the sheriff's sale, for $9000, but they deny that the property was worth $10,000 at the sale, or that any such arrangement as that stated in the bill was made by Merritt with Brown. They answer that Brown bought and holds the property for himself and not for the complainant; and that the circumstances under which the purchase was made were these: that the mortgage of Gibbons included lands held by a church of which Brown was a member, to which they had been conveyed by Merritt, with warranty, although subject to the mortgage, and which were by the decree to be sold, if the lands yet held by Merritt did not bring enough to pay the mortgage debt; that Brown and other members of that church determined to bid up Merritt's lands to a price that would satisfy the decree, but at the sale on that day the property went so low, that apparently the church property would, have to be sold. That the complainant was very anxious to have the debt paid by the sale of his lots, to save himself from liability on his covenants, and to save p.edges which had been given by him for the indemnity of the purchasers from him; and that he offered to Brown, if he would bid off the remaining lots at $9000, the amount of the deficiency, he would give him the twenty-five shares of stock, and also relieve him from raising the $9000, by paying the same himself, before the expiration of the sixty days, the time which Gibbons had consented to give for the payment,

Merritt *v.* Brown.

in order to induce Brown to bid; and that if he did not so relieve Brown, the stock was to belong to Brown.

This answer of Brown is responsive, so far as it denies the agreement set up in the bill, and also in stating what were the terms of the agreement under which the purchase was made. An answer in stating the particulars of a transaction charged and inquired into by the bill, is responsive. It was so held by Chancellor Vroom, in *Youle* v. *Richards, Saxt.* 539; and in this case the details are expressly in answer to the interrogatory which asks, "for what purpose and consideration the said stock was assigned?" The defendants could not refuse to answer this without bringing themselves into contempt.

The whole controversy depends upon the question in dispute between the parties, as to what was the agreement upon which Brown bought.

It is settled by the decision of the highest court in this state, that a parol agreement made between a defendant in execution and a purchaser at a sheriff's sale, by which the purchaser agrees to buy for the benefit of the defendant, in consequence of which the defendant permits the sale to go on, and refrains from procuring bidders, or doing anything to increase the price, will be enforced in equity, notwithstanding the want of any writing, as required by the statute of frauds. This was adjudicated in the case of *Warwick & Smith* v. *Marlatt*, decided at the Term of November, 1867, and on this part of the case the judges of that court were unanimous. Neither in that court, nor in this, did the opinions delivered, state the ground on which the case was considered not to be within the statute of frauds. It might have been held a resulting trust, on the ground that the excess of the value of the property purchased, above the amount bid, belonged to the defendant, and was by virtue of the arrangement conveyed to the purchaser without other consideration, and therefore a trust resulted to the defendant in execution; or, it might have been held to be a contract in part performed, and therefore to be enforced in equity, when it is proved that the contract was made, and that the acts

alleged to be the part performance, were done in execution of the contract.

It is difficult to sustain it, on the doctrine of a resulting trust. The bid at the judicial sale must be taken to be the value of the property, and there would be no reasons to create a resulting trust, more than in any other case where land is sold and conveyed below its value.

On the ground of a contract concerning land, in part performed, there is no difficulty in sustaining these decisions; and it appears to me the true and only ground on which the doctrine can be placed. The owner of the land, while the title is in him, makes a contract for the purchase, by which he is to do, or abstain from certain acts, in consequence of which the purchaser gets title to the property. Permitting a sale to go on, which perhaps he could not arrest or postpone, may seem a small consideration. Yet the mere power to appeal for forbearance to the plaintiff or officer conducting the sale, or to appeal to the sympathies of bystanders to save him from sacrifice, by bidding its value for his property, is a consideration which a proposed purchaser must respect. And more than all, the good feeling of the persons attending a sale, would induce them not to bid against a purchaser who was understood to be a friend of the defendant in execution, and to be advancing the money and buying the property for his benefit. It would be fraud in a purchaser, who had received the benefit of these considerations at the sale, to refuse to perform his part of the agreement.

This view makes it important to inquire and ascertain what the agreement was, which is to be enforced for the relief of the complainant.

The only direct evidence as to the agreement, is the testimony of the complainant, and of the defendant, E. G. Brown. That of Brown consists of his responsive answer; and his examination as a witness; these agree with each other. He states, in substance, that upon receiving the stock from the complainant, he agreed to purchase the remainder of the property for $9000, so as to pay off the whole debt, and

thus relieve the complainant from further liability, and free the property conveyed by him as a pledge to purchasers, and free the property of the church, and of other purchasers, from the lien of the mortgage; that the complainant undertook to pay, and was to have the privilege of paying the $9000 before the delivery of the sheriff's deed, and in such case was to have the property, and the stock which he had transferred to Brown.

There is no evidence sufficient to overcome this statement of Brown. His admissions to several of the witnesses, that he had bought the property for the complainant, and that the complainant should have a chance, do not contradict it, but are in accordance with it. The complainant himself says, in his testimony, that he was to redeem the property in sixty or ninety days. And he says that there was no further agreement as to what was to be done with the property if he did not redeem it within that time.

I have no doubt, from the whole testimony taken together, that the agreement was substantially as stated by Brown. That in consideration of the stock being transferred to him, he was willing to bid for the residue of the property $9000; that he was willing, if the complainant could raise the money before the deed was given to him, that the property should be conveyed to, or retained by, the complainant; and that the agreement was made to carry out that purpose. The benefit to the complainant was clear. He secured the payment of his whole mortgage debt, of which, in any other way, there was considerable doubt; and he secured the privilege, for sixty or ninety days longer, of having the right of selling the property, or of keeping it, if he could induce any one, in that time, to pay a larger price, or to advance the amount upon the property.

Brown secured the object for which he set out, of protecting the church from loss, without any loss to himself, if Merritt should pay the amount; and if he should not, he would hold the property and the stock, for which he had determined that he was willing to give $9000.

This is such an agreement as will be enforced in this court, but upon the terms exacted in other cases, that the party asking the performance shall have substantially complied with his part of it. It is clearly not a mortgage; it has none of the requisites of a mortgage; it is merely an agreement to sell. The transaction was not one that equity will convert into a mortgage, as made in the form in which it was taken for the purpose of depriving the mortgagor of his right to redeem. A deed, when made for that purpose, will sometimes be declared to be a mortgage, where there is at the same time an agreement to re-convey. But such construction is rarely made, except in cases where the conveyance was made to secure or pay an antecedent debt, or for money advanced upon negotiations begun for a loan, and where it appears that a loan was intended. In this case there was no antecedent debt, and the idea of advancing $9000, as a loan, on the remnants of this property, in the situation of affairs at that time, is too absurd to be considered. It would affect defendants in execution injuriously, if courts should construe such agreements into mortgages, against the clear intent of the parties. No one would dare to aid a defendant at an execution sale, for fear that his only right would be a right to foreclose and sell, at the end of six months or a year, whatever might be the agreement or intention of the parties.

Brown extended this agreement for sixty days, by parol; the complainant did not perform his part within the sixty days, or the extended time, but Brown was compelled to raise the money, and take the sheriff's deed himself. After this, all right or equity of the complainant to call upon Brown for specific performance of this agreement, was gone. Brown, after this, offered to let him have the property, upon being paid the amount advanced, and several times requested him to pay the amount and take it. The complainant omitted and declined to do this; but, after two years' neglect, and shortly before the filing of the bill in this case, he applied to Brown for a conveyance.

Merritt *v.* Brown.

Time is frequently considered not of the essence of an agreement to convey lands, and delay will not, in such cases, bar the right to have specific performance. But in all cases, where the value of the property concerned has materially changed, or where great financial changes have materially altered the relative value of money and land, time will be considered material, and a party will not be allowed to lie by until the change sets in his favor, and then ask for specific performance. This rule was very properly and clearly adopted and enforced by the late Chancellor, in *Young's adm'r* v. *Rathbone*, 1 *C. E. Green* 224.

In this case, the commencement of the war, by the attack on Fort Sumter, between the sheriff's sale and the time to redeem, had alarmed the community; prices were unsettled, and few were willing to purchase real estate at all. Within the extension of sixty days, the disaster at Bull Run had further unsettled values, and rendered the purchase of real estate undesirable. In this condition of things, the complainant failed to redeem, according to agreement, and left Brown to pay the money, and fixed with what must have appeared a bad purchase. He made no effort, he considered himself under no obligation, to redeem the property. But after two years, when, by the effect of the legal tender act, the country had been flooded with a large amount of paper money, not convertible into gold, and worth far less, and the relative value of land and this money had changed, the complainant, seeing that something was to be gained by him, and lost by Brown, by his performing, at this late day, his part of the contract, offers to pay, and asks for the property. The mere statement of the transaction shows it to be too unconscientious to be entitled to aid in this court. It is a case where time is clearly of the essence of the contract, and to which the ru'e of equity, that a party, to entitle himself to the aid of this court in enforcing specific performance of a contract, must have himself been ready, willing, and eager to perform on his part, clearly applies. The mere fact that he did once,

2 B *

when called upon to redeem, refuse or omit to perform, would be a bar to relief in this court.

The bill must be dismissed, with costs.